**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**MONTA M. BROWN,**

       **Plaintiff,**

    **v.**                                                    **Civil Action No. 3:23cv194**

**BERENICE PONCE,** *et al.,*

       **Defendants.**

## MEMORANDUM OPINION

Monta Brown, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this

42 U.S.C. § 1983 action[1] arguing that Defendants[2] violated his constitutional rights when he

received an institutional charge and a subsequent conviction. The matter is before the Court on

Mr. Brown's Second Particularized Complaint (ECF No. 30),[3] and the Motion for Summary

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] Defendants are Berenice Ponce, Rhonda Langford, and Mark Kitchen. By Memorandum Opinion and Order entered on December 13, 2024, the Court granted Defendant Ponce's Motion to Dismiss and dismissed the claims against her. *Brown v. Ponce*, No. 3:23cv194, 2024 WL 5108440, at *1–5 (E.D. Va. Dec. 13, 2024).

[3] For reasons that are unclear, Mr. Brown filed a new "Civil Action Complaint" on May 28, 2024. (ECF No. 39.) By Memorandum Order entered on June 13, 2024, the Court explained that the matter proceeded on the Second Particularized Complaint, (ECF No. 30), Mr. Brown was not permitted to litigate two complaints, and if he wished his newest "Civil Action Complaint" to replace his Second Particularized Complaint, he was required to notify the Court of his desire to proceed on the "Civil Action Complaint," within fifteen (15) days of the date of entry thereof. (ECF No. 44, at 1.) Otherwise, the Court explained, the matter remained before

Judgment filed by the Defendants Langford and Kitchen ("Defendants") (ECF No. 54).

Defendants and the Court provided Mr. Brown with notice pursuant to *Roseboro v. Garrison*,

528 F.2d 309 (4th Cir. 1975). (ECF Nos. 54-1, 56.) Mr. Brown has filed several responses (ECF

Nos. 59, 60),[4] his own Motion for Summary Judgment (ECF No. 57), and two declarations (ECF

No. 58; ECF No. 59, at 4–6). For the reasons stated below, Defendants' Motion for Summary

Judgment (ECF No. 41) will be GRANTED, and Mr. Brown's Motion for Summary Judgment

(ECF No. 57) will be DENIED.

## I. Procedural History and Remaining Claims

By Memorandum Order (ECF. No. 32) entered on April 15, 2024, the Court conducted its

screening obligations under 28 U.S.C. § 1915, and explained as follows:

> Upon concluding the review of the complaint required by the Prison Litigation
> Reform Act, it is ORDERED that:
>
> 1.      Plaintiff contends that Defendant Langford violated his Fifth
> Amendment due process rights[[5]] and a Sixth Amendment right[[6]] to "an impartial
> hearing." (ECF No. 30 ¶¶ 23–24.) Because Plaintiff is a state inmate bringing
> claims against state actors, his due process claims are governed by the Fourteenth

---

the Court on the Second Particularized Complaint only. (ECF No. 44, at 1.) Mr. Brown did not
notify the Court that he wished to only proceed on the "Civil Action Complaint." Therefore, the
Second Particularized Complaint is the only operative complaint before the Court.

[4] Despite already filing his Traverse/Response in Opposition of Defendants' Motion for
Summary Judgment ("Response," ECF No. 59), Mr. Brown filed a "Request for Extension of
Filing Time of Affidavits, Exhibits, and or Brief in Opposition to Defendants Motion for
Summary Judgment," (ECF No. 61), that the Court granted by Memorandum Order entered on
October 28, 2024. (ECF No. 64, at 5.) The Court permitted Mr. Brown to file any of the above
within thirty (30) days of the date of entry thereof. (*Id.*) Thirty days has long expired. Thus, the
Motion for Summary Judgment is ripe for disposition at this juncture.

[5] "No person shall be . . . deprived of life, liberty, or property, without due
process of law. . . ." U.S. Const. amend. V.

[6] "In all criminal prosecutions, the accused shall enjoy the right to a speedy
and public trial, by an impartial jury of the State and district wherein the crime shall
have been committed . . . ." U.S. Const. amend. VI.

Amendment,[7] not the Fifth Amendment. *See Winfield v. Bass*, 106 F.3d 525, 530 n.2 (4th Cir. 1997). Moreover, it is the Fourteenth Amendment Due Process Clause, not the Sixth Amendment, that provides a state inmate with the right to an impartial institutional hearing. Plaintiff's claims brought under the Fifth and Sixth Amendment are DISMISSED.

Plaintiff also suggests that "[Defendant] Ponce['s] voyeurism seized my privacy in my house" and Defendant Langford "seized my papers and effects when she denied my requests for evidence," thereby violating his Fourth Amendment rights.[8] (ECF No. 30 ¶¶ 21–22.) Plaintiff also suggests that Defendant Ponce violated his rights "as she stated that I have no right to any privacy." (ECF No. 30 ¶ 18.) Plaintiff, as a prisoner, has no "legitimate expectation of privacy [in his cell] and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). "The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." *Id.* at 526. Plaintiff has no legitimate expectation of privacy in his cell and his Fourth Amendment claims will be DISMISSED.[9] Accordingly, only Plaintiff's Fourteenth Amendment due process claims remain.[10]

(ECF No. 32, at 1–2 (footnote numbers altered) (all other alterations in original).)

Defendant Ponce filed a Motion to Dismiss. (ECF No. 41.) However, prior to the Court ruling on that motion, and to meet the time requirements set forth by the Court, on September 16,

---

[7] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[8] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.

[9] Although Plaintiff claims that Defendant Ponce violated his due process rights "as she stated that I have no right to any privacy," (ECF No. 30 ¶ 18), this is once again a Fourth Amendment claim and will be DISMISSED. To the extent that Plaintiff argues that he was denied evidence for his institutional hearing, that claim arises from the Fourteenth Amendment, not the Fourth Amendment. The Court allows that claim to proceed solely under the Fourteenth Amendment.

[10] The remaining Fourteenth Amendment due process claims are contained in paragraphs ¶¶ 19–20, 22–24.

2024, Defendants Ponce, Langford, and Kitchen filed a Motion for Summary Judgment.[11] (ECF No. 54.) On September 30 and October 7, 2024, Mr. Brown filed his own Motion for Summary Judgment and responses to the Defendants' Motion for Summary Judgment. (ECF Nos. 57–60.) By Memorandum Order entered on December 13, 2024, that the Court granted Defendant Ponce's Motion to Dismiss and dismissed the claims against her. (ECF No. 66.) *Brown v. Ponce*, No. 3:23cv194, 2024 WL 5108440, at *1–5 (E.D. Va. Dec. 13, 2024). The Court notes that because Mr. Brown's Motion for Summary Judgment, responses, and declarations were filed before the Court dismissed the claims against Defendant Ponce, these submissions contain facts that pertain to his claims against Defendant Ponce and are immaterial to the remaining claims before the Court.

As explained in the April 15, 2024 Memorandum Order (ECF No. 32), Mr. Brown's due process claims remain as set forth in paragraphs ¶¶ 19–20, and 22–24 of his Particularized Complaint. In those paragraphs Mr. Brown stated the following with respect to the remaining Defendants:

> 19. As stated in sec. II, 11–16, Ms. Langford violated all of my due process rights when she did not follow the DOC policy and procedure which provide Plaintiff with due process rights. Ms. Langford further violated my due process right in [his case] as she denied my due process right to properly question the said "victim" in the case.
>
> 20. As stated in sec. II, 17, Mr. Kitchen violated my due process rights when he did not follow the DOC policy and procedure which provide me the due process right to request video and audio camera footage as evidence th[is] case . . . .
>
> . . . .
>
> 22. As stated in sec. II, 11–16, Ms. Langford seized my papers and effects when she denied all my requests for evidence that would prove my innocence and that I was indeed a victim . . . .
>
> . . . .

---

[11] It is unclear why Defendant Ponce joined in the Motion for Summary Judgment when she had a pending Motion to Dismiss.

23. As stated in sec. II, 11–16, Ms. Langford deprived me of liberty without due process right when she failed to follow DOC policy and procedure. Her actions directly deprived me of early release good time, security level DOC transfer, and job which provide my livelihood.

. . . .

24. As stated in sec. II, 11–16, Ms. Langford deprived me of an impartial hearing, which is guaranteed to me by DOC policy and procedure, and DOC Operational Procedure 861.1.

(ECF No. 30, at 3.) In the December 13, 2024 Memorandum Opinion, the Court noted "that several pages later, on page 6, there is an additional due process allegation against Ms. Langford in paragraph 25." (ECF No. 65, at 7 n.10.) That paragraph states:

25. As stated in sec. 11–16, Ms. Langford deprived me of an impartial hearing when she took Ms. Ponce['s] side . . . in every manner and further spoke in the place of Ms. Ponce in the above hearing.

(ECF No. 30, at 6.) The Court construes Mr. Brown to raise the following remaining claims:

Claim One:    Defendant Langford violated Mr. Brown's due process rights during the institutional hearing when she did not follow VDOC policy or procedure which "deprived [him] of early release good time, security level DOC transfer, and [his] job," (ECF No. 30, at 3) by:
(a) refusing to let Mr. Brown question the victim (*id.*);
(b) refusing his requests for evidence (*id.*);
(c) and depriving him of an impartial hearing "when she took Ms. Ponce side" and "further spoke in the place of Ms. Ponce" (*id.* at 6).

Claim Two:    Defendant Kitchen violated Mr. Brown's due process rights during the institutional hearing "when he did not follow the DOC policy and procedure which provide me the due process right to request video and audio camera footage as evidence th[is] case . . . . (*Id.* at 3.)

Mr. Brown seeks monetary relief and "professional mental aid treatment." (*Id.* at 6.)

## II. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the

court of the basis for the motion, and to identify the parts of the record which demonstrate the

absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

issue, a summary judgment motion may properly be made in reliance solely on the pleadings,

depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation

marks omitted). When the motion is properly supported, the nonmoving party must go beyond

the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

(quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment

motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United

States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "'*scintilla* of evidence'" will

not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v.

Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)).

    In support of their Motion for Summary Judgment, Defendants have submitted: (1) an

Affidavit of R. Langford (ECF No. 55-1, at 1–5);[12] (2) a copy of Virginia Department of

Corrections ("VDOC") Operating Procedure § 861.1 ("Operating Procedure § 861.1"), ECF

No. 55-1, at 6–45); (3) copies of the paperwork for Mr. Brown's institutional charge and

conviction (ECF No. 55-1, at 46–54); and, (4) a CD containing the audio of the disciplinary

hearing on September 1, 2022. Mr. Brown submitted a Declaration in support of his own Motion

for Summary Judgment (ECF No. 58), and a Declaration in support of his Response (ECF

---

[12] ECF No. 55-1 is comprised of more than just Defendant Langford's Affidavit. The
Court cites to Affidavit which is pages one through five of ECF No. 55-1, by paragraph numbers,
and cites to the remainder of ECF No. 55-1 by page number.

No. 59, at 4–6),[13] and swore to the contents of his Second Particularized Complaint. (ECF No. 30, at 4.)[14]

In light of the foregoing submissions, the following facts are established for purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Mr. Brown.

### III. Summary of Pertinent Facts

Mr. Brown was incarcerated in Sussex I State Prison ("Sussex") in August and September of 2022. Defendants Langford and Kitchen were hearing officers during this time. (ECF No. 55-1 ¶¶ 1, 13; ECF No. 30, at 1.)

---

[13] The facts offered by affidavit must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c). In this regard, the statement in the affidavit or sworn statement "must be made on personal knowledge . . . and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Summary judgment affidavits must also "set out facts that would be admissible in evidence." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (citing *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *see also Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991)). In his declarations, Mr. Brown makes statements that are conclusory, speculative, and immaterial and are of no value in assessing the propriety of summary judgment. For example, Mr. Brown makes conclusory statements such as he was "sexually abused" and "sexually harassed." (ECF No. 58, at 3.) Mr. Brown also makes bald assertions that there are "usual institutional procedures" that female officers must announce their presence without any citation to an actual policy. (*Id.* at 2.) Finally, as explained previously, much of Mr. Brown's declarations contain statements that are immaterial to the remaining claims before the Court. The Court will not consider these conclusory and immaterial assertions in evaluating the motions for summary judgment.

[14] Although Mr. Brown swore to the contents of his Response as well (ECF No. 59, at 1–3), this is not evidence. The Court informed Mr. Brown that

> Plaintiff is advised that the Court will not consider as evidence in opposition to any motion for summary judgment a memorandum of law and facts that is sworn to under penalty of perjury. Rather, any verified allegations must be set forth in a separate document titled "Affidavit" or "Sworn Statement," and reflect that the sworn statements of fact are made on personal knowledge and that the affiant is competent to testify on the matter stated therein. *See* Fed. R. Civ. P. 56(c)(4).

(ECF No. 32 ¶ 5.)

A. **The Institutional Charge**

Operating Procedure 861.1 sets forth the guidelines for the disciplinary process. (ECF No. 55-1 ¶ 4.) On August 19, 2022, at 12:33 p.m., Counselor Ponce observed Mr. Brown masturbating in his cell. (ECF No. 30 ¶ 4.) At 2:26 p.m. that same day, Counselor Ponce filed a disciplinary charge against Mr. Brown for "Indecent Exposure" which was Offense Code 137B. (ECF No. 55-1, at 46.) In the Disciplinary Offense Report, Counselor Ponce wrote: "I, Counselor B. Ponce was making rounds on HU 3D an[d] I wa[l]ked by inmate M. Brown #1394944 cell window to check and he was in bed with his penis exposed and he was masturbating therefore I wrote this charge." (ECF No. 55-1, at 46.) Lt. Tucker reviewed and approved the disciplinary charge on August 19, 2022, at 3:50 p.m. (ECF No. 55-1, at 46.)

On August 19, 2022, at 10:45 p.m. a sergeant served Mr. Brown with the disciplinary charge and advised Mr. Brown of his rights at the disciplinary hearing at that time. (ECF No. 55-1, at 46.) Mr. Brown refused to sign the form to acknowledge that he had been served with the charge and advised of his rights. (ECF No. 55-1 ¶ 7; *see* ECF No. 55-1, at 46.) The sergeant who served the Disciplinary Offense Report signed the form certifying that Mr. Brown had been served with the charge, advised of his rights, and that Mr. Brown refused to sign the form. (ECF No. 55-1, at 46.) Under the section "ADVISEMENT OF RIGHTS," Mr. Brown indicated that he requested a staff or offender advisor to assist him at the hearing, that he wished to request witnesses and documentary evidence, and that he wished to appear at the disciplinary hearing. (ECF No. 55-1, at 46.)

At the time that Mr. Brown was served with the disciplinary charge, he was also provided with a Penalty Offer which offered Mr. Brown loss of commissary for 85 days as his sole punishment. (ECF No. 55-1, at 47.) Mr. Brown declined the Penalty Offer which meant that he

8

understood that he would be scheduled for a Disciplinary Hearing. (ECF No. 55-1, at 47.) The disciplinary hearing was set for August 24, 2022. (ECF No. 55-1, at 46.)

On August 24, 2022, Mr. Brown's disciplinary hearing was postponed until September 1, 2022. (ECF No. 55-1, at 49.) Defendant Langford served Mr. Brown with the Notice of Postponement which he refused to sign to acknowledge his receipt of the form. (ECF No. 55-1, at 49.)

## B. **Brown's Requests for the Institutional Hearing**

On August 24, 2022, Mr. Brown submitted a Witness Request Form and asked for two inmates, Randy Gholson and Thomas Hoyt, to testify during the institutional hearing that there was no announcement made that a female was in the pod. (ECF No. 55-1, at 50.) Defendant Langford denied this request for both witnesses to testify as "Not Relevant." (ECF No. 55-1, at 50; *see* ECF No. 55-1 ¶ 11.) On August 26, 2022, Mr. Brown submitted a second Witness Request Form, in which he requested two staff witnesses. (ECF No. 55-1, at 51.) First, Mr. Brown requested A.D. Wethington, the Operation Officer to testify about "PREA[15] policy, PREA procedure, Inmate cell privacy." (ECF No. 55-1, at 51.) Defendant Langford denied this request as "Not Relevant." (ECF No. 55-1, at 51.) Second, Mr. Brown requested C/O Banks to testify "[i]f Counselor Ponce came to #15 (3D) to talk to me." (ECF No. 55-1, at 51.) Defendant Langford denied this request as "Not Relevant" because "she stated she did not speak to you." (ECF No. 55-1, at 51.) Defendant Langford also avers that Mr. Brown also failed to submit this request to the Hearings Officer within forty-eight hours of the service of the charge. (ECF No. 55-1 ¶ 12; *see* ECF No. 55-1, at 51.)

---

[15] PREA is the abbreviation for the Prison Rape Elimination Act.

Mr. Brown also submitted an Offender Request for Evidence form "[r]equesting video to show if Ponce came to 3D15" and "[r]equesting audio to show if Ponce came to speak to me 3D15." (ECF No. 55-1, at 52.) Mr. Brown checked a box indicating that he was "Requesting to Personally Review the Video Evidence Prior to the Hearing." (ECF No. 55-1, at 52.) Defendant Kitchen, a hearings officer, noted on the form, "according to intel, video not available." (ECF No. 55-1, at 52.) Defendant Langford avers that Mr. Brown also failed to submit this request to the Hearings Officer within forty-eight hours of the service of the charge. (ECF No. 55-1 ¶ 13; *see* ECF No. 55-1, at 52.)

On August 29, 2022, Defendant Langford received a Request for Documentary Evidence form from Mr. Brown in which he requested the logbook from the pod. (ECF No. 55-1 ¶ 14.) Mr. Brown indicated that this evidence was relevant to his charge to see "[i]f B.E. Ponce done a round in 3D pod." (ECF No. 55-1, at 53.) Defendant Langford denied this request because it was not submitted within forty-eight hours of the service of the charge. (ECF No. 55-1 ¶ 14; *see* ECF No. 55-1, at 53.)

### C. Institutional Hearing

On September 1, 2022, at 9:45 a.m., Defendant Langford conducted Mr. Brown's disciplinary hearing. (ECF No. 55-1 ¶ 15.) Mr. Brown had an inmate advisor present, and he pled not guilty to the charge. (ECF No. 55-1 ¶ 15.) Defendant Langford avers that:

> In the hearing, I explained to him that Randy Gholson and Thomas Hoyt were not relevant. I also explained that Wethington's appearance as a witness was not relevant because Brown maintains access to the law library where he can obtain a copy of the Prison Rape Elimination Act ("PREA") policy. I told Brown C/O Banks's testimony was not relevant because Counselor Ponce did not enter the pod to speak with Brown; rather, she came to conduct rounds. Regarding the Request for Evidence, I explained to Brown that hearings officer Kitchen checked with the intelligence unit and the video was not available. In response to the logbook request, I informed Brown it was denied due to not being timely submitted.

10

(ECF No. 55-1 ¶ 15.) During the hearing, Defendant Langford outlined Mr. Brown's rights which included an opportunity to ask questions of Counselor Ponce. (ECF No. 55-1 ¶ 16.) Mr. Brown's allowed his inmate advisor to question Counselor Ponce on his behalf. (ECF No. 55-1 ¶ 16.) The inmate advisor asked Counselor Ponce "whose job is it to announce when females on the pod?" Counselor Ponce responded that no one is required to announce their presence according to policy and that the policy is located on the wall. (Hrg. Tr. 8:00–10.) Defendant Langford interjected and explained that the institution refrains from identifying persons by gender. (Hrg. Tr. 8:15-34.) The inmate advisor then asked Counselor Ponce again about announcing female on the pod and Defendant Langford interjected again and indicated Counselor Ponce was not obliged to answer that question. (Hrg. Tr. 8:34-47.) The inmate advisor then continued to ask Counselor Ponce questions about her walking through the pod and her rounds that day. Counselor Ponce indicated that when conducting rounds, she looks into every cell. (Hrg. Tr. 9:07-29.) Counselor Ponce testified that she was not in the pod to see Mr. Brown. (Hrg. Tr. 11:10-28.) When asked whether an inmate has a right to privacy in his cell when using the bathroom, Counselor Ponce indicated that Mr. Brown was not using the bathroom and was uncovered intentionally and if he had been covered, it would have been different. (Hrg. Tr. 13:27-56.) Mr. Brown was also permitted to ask Counselor Brown his own questions and make his own argument.

Defendant Langford then asked Mr. Brown to explain what occurred on August 19, 2022. (ECF No. 55-1 ¶ 17.) Mr. Brown explained that he was not aware of Counselor Ponce's presence in the pod, and he admitted to masturbating, stating, "maybe I was doing it," but indicated that it was not intentional. (Hrg. Tr. 18:35-49.)[16]  Mr. Brown confirmed that he had a

---

[16] Mr. Brown states "Plaintiff did not admit to being exposed however, only presented a what 'if' scenario." (ECF No. 59-1 ¶ 4.) Mr. Brown has admitted that he was masturbating in

11

sheet and blanket on his bed and claimed he had a sheet hanging up.[17] (Hrg. Tr. 19:16-47.)
Defendant Langford explained to Mr. Brown that if he was uncovered while masturbating then
Counselor Ponce or male officers were permitted to charge him with indecent exposure. (Hrg.
Tr. 19:47-21:12.)

After her discussions of the incident with Mr. Brown, Defendant Langford indicated that
the penalty was loss of 85 days of commissary which she clearly believed was too high. (Hrg.
Tr. 25:27-33.) Instead, she found Mr. Brown guilty, but only imposed a $5 penalty and told him,
"next time, please use your sheet." (Hrg. Tr. 25:33-53.) Defendant Langford explained that Mr.
Brown could appeal her decision within fifteen days of the date he received a copy of the
disciplinary charge and hearing documentation. (Hrg. Tr. 25:54-26:20.) Nevertheless, Mr.
Brown never filed an appeal. (ECF No. 55-1 ¶ 18.)

### III.  Due Process

The Due Process Clause applies when government action deprives an individual of a
legitimate liberty or property interest. *See Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564,
569–70 (1972). Thus, the first step in analyzing a procedural due process claim is to identify
whether the alleged conduct affects a protected liberty or property interest. *Beverati v. Smith,*
120 F.3d 500, 502 (4th Cir. 1997) (citations omitted). A liberty interest may arise from the
Constitution itself, or from state laws and policies. *See Wilkinson v. Austin,* 545 U.S. 209, 220–
21 (2005).

---

his pleadings filed in this case. (ECF No. 30, at 1 (stating that Counselor Ponce "watched me
masturbate without my knowledge"); *id.* at 6 ("Ms Ponce was peering at me who was in bed
performing natural bodily functions").) That fact has been conclusively established and is not a
disputed fact as Mr. Brown clearly attempts to suggest in his later filings.

[17] Although Mr. Brown said he had a sheet hanging up to block his bed, Counselor Ponce
indicated that he did not, because if he had, she would have written him up with another charge.
(Hrg. Tr. 13:52-14:02.)

To establish a state-created liberty interest, Mr. Brown "must make a threshold showing that the deprivation imposed amounts to an 'atypical and significant hardship' or that it 'inevitably affect[s] the duration of his sentence.'" *Puranda v. Johnson*, No. 3:08CV687, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (alteration in original) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995)). If Brown makes this threshold showing, he must then identify the state regulatory or statutory language that creates a protected liberty interest in remaining free from such confinement. *See id.*

## A. Claim One

In Claim One, Mr. Brown contends that Defendant Langford violated his due process rights during the institutional hearing when she did not follow VDOC policy or procedure which "deprived [him] of early release good time, security level DOC transfer, and [his] job," (ECF No. 30, at 3), by: (a) refusing to let Mr. Brown question the victim (*id.*); (b) refusing his requests for evidence; (c) and depriving him of an impartial hearing "when she took Ms. Ponce side" and "further spoke in the place of Ms. Ponce" (*id.* at 6).[18] Despite Mr. Brown's contention that he lost early release good time credit, his security level was increased, and he lost his job, the record fails to bear out these allegations. Instead, the record reflects that Mr. Brown's only penalty was the imposition of a $5.00 fine. Nevertheless, even if Mr. Brown had his security level changed, and lost his job, these are not atypical and significant hardships. With respect to his claim that he was "deprived . . . of early release good time," as discussed below, it is doubtful that Mr. Brown has a state created liberty interest in this credit.

---

[18] For the first time in his Declaration in Support of Plaintiff's Motion for Summary Judgment, Mr, Brown states he "was deprived due process of law by being placed in segregation without a disciplinary hearing or completed investigation of the charge and incident." (ECF No. 58 ¶ 19.) This was not a claim raised in his Particularized Complaint and Mr. Brown did not seek to amend his complaint to add this claim. Therefore, this new claim is not properly before the Court and will not be considered.

### 1. The Constitution Fails to Confer a Liberty Interest in Avoiding Fines, Change in Security Level, or a Job

As noted above, the only penalty that Mr. Brown received for his institutional conviction was a $5.00 fine, which Mr. Brown fails to even acknowledge. Nevertheless, the imposition of a monetary fine fails to implicate an inmate's due process rights, whether viewed as a deprivation of liberty or property. *See Pelletier v. Elam*, No. 1:20cv524 (TSE/MSN), 2021 WL 2545462, at *3 n.3 (E.D. Va. June 17, 2021) (explaining the circuit split on whether the *Sandin* "atypical and significant" analysis applies in the context of property deprivations such as fines). Rather, "'small monetary penalties and penalties that do not impose restraint do not impose atypical and significant hardship on a prisoner in relation to the ordinary incidents of prison life and' thus do not constitute infringements on a prisoner's liberty interests." *Id.* at 3 (quoting *Roscoe v. Mullins*, No. 7:18cv00132, 2019 WL 4280057, at *3 (W.D. Va. Sept. 10, 2019) (granting summary judgment on due process claim where the only penalty imposed was a $15 penalty), *aff'd on other grounds,* No. 19-7343, 828 F. App'x 921 (4th Cir. Oct. 28, 2020)); *Henderson v. Commonwealth*, No. 7:07–cv–00266, 2008 WL 204480, at *10 (W.D. Va. Jan. 23, 2008) (finding that imposition of $12.00 fine for institutional conviction did not "pose[] an atypical and significant hardship on the plaintiff in comparison to the ordinary incidents of prison life"). Because Mr. Brown possesses no liberty interest in avoiding the imposition of a fine, he lacks entitlement to federal due process protections before receiving this penalty.

If, instead, viewed as a deprivation of property, the imposition of a $5.00 fine still fails to implicate due process considerations because Virginia's provision of adequate post-deprivation remedies forecloses such a claim. *See Hudson v. Palmer*, 468 U.S. 517, 533, 534–35 (1984); *Wilson v. Agboola*, No. 3:22cv665 (DJN), 2023 WL 7545220, at *2 (E.D. Va. Dec. 13, 2023) (citations omitted). Under the Virginia Tort Claims Act, Virginia has waived sovereign

14

immunity for damages for "negligent or wrongful" acts of state employees acting within the scope of their employment. Va. Code Ann. § 8.01-195.3. The United States Court of Appeals for the Fourth Circuit has held that the Virginia Torts Claim Act and Virginia tort law provide adequate post-deprivation remedies for torts committed by state employees. *See Wadhams v. Procunier*, 772 F.2d 75, 78 (4th Cir. 1985) (finding inmate's recovery in federal court for deprivation of liberty foreclosed, because "Virginia provides adequate tort remedies for post-deprivation compensation"). Because the availability of tort action in state court fully satisfies the requirements of a meaningful post-deprivation process, Mr. Brown cannot state a claim for the assessment of a $5.00 fine under the Fourteenth Amendment. *See Jordan v. Rodriguez*, No. 3:11CV193, 2013 WL 4759247, at *2–3 (E.D. Va. Sept. 4, 2023); *Henderson*, 2008 WL 204480, at *10 n.7.

Second, Mr. Brown also lacks a protected liberty interest in maintaining a particular classification level or entitlement to housing in a lower security classification. *See Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) (citing *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)); *Knight v. Johnson*, No. 3:10CV648, 2011 WL4101664, at *4 (E.D. Va. Sept. 14, 2011). Finally, the law clearly establishes that Mr. Brown has no protected property or liberty interest in maintaining a prison job. *Backus v. Ward*, No. 98-6331, 1998 WL 372377, at *1 (4th Cir. 1998) (citing *Sandin*, 515 U.S. at 486–87; *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995)). In sum, Mr. Brown has no constitutionally protected interest in avoiding a fine, changes to his classification level, or a prison job, thus, he lacks any entitlement to the protections of the Due Process Clause for these deprivations.

### 2. **The Constitution Confers a Liberty Interest in *Vested* Good Time Credit**

To the extent that Mr. Brown alleges that Defendants "deprived [him] of early release good time" credit (ECF No. 30, at 3), his claim doubtfully implicates a protected liberty interest.

It is well established that inmates have a protected liberty interested in *vested* good time credits. *See Wolff v. McDonnell*, 418 U.S. 539, 560-61 (1974); *Puranda v. Hill*, No. 3:10CV733-HEH, 2012 WL 2311844, at *3 (E.D. Va. June 18, 2012) (citing *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 653 n.9 (4th Cir. 2007)). However, if as result of this disciplinary conviction, Mr. Brown began to earn good time credits at a lower level, he has "no protected liberty interest in remaining in or being assigned to a particular good conduct allowance level." *Mills v. Holmes*, 95 F. Supp. 3d 924, 935 (E.D. Va. 2015) (quoting *West v. Angelone*, No. 98-6858, 1998 WL 746138, at *1 (4th Cir. Oct. 26, 1998)); *Puranda*, 2009 WL 3175629, at *5. Mr. Brown has not supplied evidence that he lost vested good time credits as a result of his disciplinary hearing. Nevertheless, even assuming that he lost vested good time credits, the Constitution only guarantees the following minimal process prior to revoking such credits:

> (1) an impartial tribunal; (2) written notice of the charges prior to the hearing; (3) an opportunity to call witnesses and present documentary evidence; (4) aid from a fellow inmate or staff representative if the issues are complex; and, (5) a written statement by the fact finder describing the evidence relied upon and the reasons for taking disciplinary action.

*Coor v. Stansberry*, 3:08CV61, 2008 WL 8289490, at *2 (E.D. Va. Dec. 31, 2008) (citing *Wolff*, 418 U.S. at 563–71). Mr. Brown essentially argues that he was denied an impartial tribunal and the opportunity to question witnesses and present certain evidence. As discussed below, despite his contentions to the contrary, Mr. Brown received all the process that was due.

### a. Alleged Refusal to Allow Brown to Question the Victim

In Claim One (a) Mr. Brown contends that Defendant Langford violated his due process rights during the institutional hearing when she did not follow VDOC policy or procedure when she refused to let Mr. Brown question the victim. (ECF No. 30, at 3.) First, to the extent that Mr. Brown contends in Claim One that Defendant Lanford failed to follow VDOC policy or procedure, this fails to state a claim of constitutional dimension. Violations of prison operating

16

procedures do not implicate due process rights and are not cognizable under § 1983. *See Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990); *Puranda v. Hill*, No. 3:10CV733–HEH, 2012 WL 2311844, at *5 (E.D. Va. June 18, 2012). Accordingly, any claim that Defendant Langford violated VDOC policy is legally frivolous and will be DISMISSED.

With respect to his claim that Defendant Langford refused to let Mr. Brown question the victim, Counselor Ponce, this contention is belied by the record. Mr. Brown chose to have an inmate advisor represent him during the hearing and the inmate advisor was permitted to question Counselor Ponce at great length. Contrary to Mr. Brown's contention here, Mr. Brown was also permitted to question Counselor Ponce after his inmate advisor was finished. Thus, his claim is patently false. In response to questioning, Counselor Ponce indicated that she did not have to announce her presence in the pod, which Mr. Brown simply refuses to accept as true.[19] To the extent that Mr. Brown wanted to keep asking questions that had already been answered about whether Counselor Ponce was permitted to be in the pod without announcing her presence or about other irrelevant issues and Defendant Langford stopped him, this fails to give rise to a due process claim. "The fundamental requirement of due process is the opportunity to be heard and it is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Parratt v. Taylor*, 451 U.S. 527, 540 (1981) (internal quotation marks omitted) (citation omitted), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Here, Mr. Brown had the opportunity to be heard and to challenge Counselor Ponce's report and testimony during the institutional hearing through his inmate advisor. *See Freeman v. Rideout*, 808 F.2d 949, 951–52 (2d Cir. 1986) (finding no due process violation were an inmate "was granted a hearing, and was afforded the opportunity to rebut the charges against him").

---

[19] Mr. Brown continues to insist that Counselor Ponce was required to announce herself in the pod before entering. At no time has Mr. Brown provided evidence that this policy exists.

Moreover, Mr. Brown has readily admitted that he engaged in the conduct that he was charged with, and that Counselor Ponce testified about. Although he desired to ask repetitive and irrelevant questions of Counselor Ponce and faults Defendant Langford for refusing to allow them, "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits . . . ." *Wolff*, 418 U.S. at 566. Mr. Brown fails to show that he was denied due process on this ground. Accordingly, Claim One (a) lacks merit and will be DISMISSED as frivolous.

### b. **Refusing Mr. Brown's Requests for Evidence**

In Claim One (b), Mr. Brown contends that Defendant Langford violated his due process rights during the institutional hearing when she refused his requests for evidence. (ECF No. 30, at 3.) Similarly, in Claim Two, Mr. Brown contends that Defendant Kitchen violated his due process rights during the institutional hearing "when he did not follow the DOC policy and procedure which provide me the due process right to request video and audio camera footage as evidence th[is] case . . . . (*Id.*) Prior to the hearing, Defendant Kitchen explained that he had checked with intelligence, and the audio or video of Counselor Ponce entering the pod was not available. *See Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017) ("Prison administrators are not obligated to . . . produce evidence they do not have."). Defendant Langford also explained her reasons for excluding the evidence on the record including lack of relevance and the tardiness of the requests. None of the evidence that Mr. Brown sought was even relevant to the charge and his guilt or innocence. Mr. Brown desired certain evidence including witnesses, audio and video, and access to the logbook to show that Counselor Ponce was in his pod and did not announce herself at the time he was observed masturbating uncovered. The fact that Counselor Ponce was in Mr. Brown's pod, and at his cell, and did not announce herself at that time, was undisputed. It is also undisputed that Counselor Ponce was not required to announce her presence. Therefore, Mr. Brown fails to demonstrate that this evidence would have aided in

18

his defense. *See Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003) (explaining that "there is no right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary" (citations omitted).)[20]  Mr. Brown fails to demonstrate that his due process rights were somehow violated. Accordingly, Claim One (b) and Claim Two lack merit and will be DISMISSED as frivolous.

### c. Depriving Mr. Brown an Impartial Hearing

In Claim One (c), Mr. Brown contends that Defendant Langford violated his due process rights during the institutional hearing when she did not follow policy or procedure by "depriv[ing] him of an impartial hearing when she took Ms. Ponce side" and "further spoke in the place of Ms. Ponce." (ECF No. 30, at 6.)  Mr. Brown fails to expand upon this vague statement in any meaningful way.  Presumably, Mr. Brown believes he was denied a fair hearing by Defendant Langford because he and his inmate advisor were not permitted to ask unlimited and repetitive questions of Counselor Ponce about whether she had to announce that a female was in the pod.  However, it is undisputed that Counselor Ponce was not required to announce she was in the pod.  As discussed above in conjunction with Claim One (a), Defendant Langford did not deprive Mr. Brown of due process during his institutional hearing on these grounds.  Mr. Brown offers no other evidence that would demonstrate that Defendant Langford deprived him

---

[20] The Court recognizes that inmates "have a qualified right to obtain and present video surveillance evidence" when being deprived of a liberty interest. *Lennear v. Wilson*, 937 F.3d 257, 262 (4th Cir. 2019).  First, staff checked with intelligence after Mr. Brown's request and learned that video evidence that Mr. Brown wanted did not exist.  Moreover, even if the video had existed, Mr. Brown wanted to the video and audio "to show if Ponce came" to his cell and presumably to show that she did not announce that a female was in the pod. (ECF No. 55-1, at 52.)  It is undisputed that Counselor Ponce came to his cell while conducting rounds and did not announce her presence.

During the institutional hearing, the inmate advisor argued for the first time that the video could have shown that Mr. Brown had a sheet hanging.  Defendant Langford advised him that that was not the reason that Mr. Brown requested the video, and more importantly, the video cameras do not record inside the cells. (Hrg. Tr. 21:17-22:02.)

of due process during the institutional hearing. Accordingly, Claim One (c) lacks merit and will be DISMISSED as frivolous.[21]

## V. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 41) will be GRANTED. Mr. Brown's Motion for Summary Judgment (ECF No. 57) will be DENIED. Mr. Brown's claims will be DISMISSED for lack of merit and as frivolous. *See Daniels v. Caldwell*, No. 3:11CV461, 2013 WL 6713129, at \*4 (E.D. Va. 2013) (applying 28 U.S.C. § 1915(e)(2)(B)(i) at summary judgment stage when claims are based on "an undisputably meritless legal theory" or the "factual contentions are clearly baseless" (citations omitted)). The action will be DISMISSED. The Clerk will be DIRECTED to note the disposition of the action for the purposes of 28 U.S.C. § 1915(g).

An appropriate Final Order shall issue.

Date: 05/13/2025
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

---

[21] Mr. Brown also received all process that he was due. First, Mr. Brown received advanced written notice of the charges. Second, Mr. Brown had an opportunity to call witnesses and present documentary evidence, albeit Defendants Langford and Kitchen found his requests either irrelevant, unavailable, or procedurally barred because they were tardy. Third, Mr. Brown had aid from a fellow inmate. Fourth, Mr. Brown received a written statement by the fact finder describing the evidence relied upon and the reasons for taking disciplinary action. Therefore, Mr. Brown received all of the minimal process that he was due. *See Coor*, 2008 WL 8289490, at \*2 (citing *Wolff*, 418 U.S. at 563–71).

Beyond Mr. Brown's procedural due process claims, to the extent that Mr. Brown contends that the evidence was insufficient to support his conviction, the Supreme Court has held "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary" officer. *Superintendent Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 455–56 (1985) (citations omitted). "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Id.* at 455. As reflected above, there was more than "some evidence" that Mr. Brown was masturbating uncovered in his bed and therefore was guilty of indecent exposure.